UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDA L. WILLINGHAM,

        Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

        Defendant.

CASE NO. C05-5003KLS

ORDER REVERSING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS

Plaintiff, Linda L. Willingham, has brought this matter for judicial review of the denial of her application for disability insurance benefits. The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13. After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-six years old.[1] Tr. 30. She has a general equivalency diploma and past work experience as a hand packer, a sales clerk, a cashier, a receptionist, and an export-import expeditor.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

Tr. 27, 94, 99.

Plaintiff filed an application for disability insurance benefits on June 21, 2001, alleging disability as of September 15, 1997, due to carpal tunnel syndrome, herniated and deteriorating discs, and depression. Tr. 15-16, 82-84, 93. Her application was denied initially and on reconsideration. Tr. 30-32, 37. Plaintiff requested a hearing, which was held on August 5, 2003, before an administrative law judge ("ALJ"). Tr. 356. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 356-403.

On March 31, 2004, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of bilateral carpel tunnel syndrome, status post two release surgeries, and degenerative disc disease at C6-7;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which did not preclude her from being able to perform her past relevant work as a receptionist; and

(5) at step five, plaintiff could perform other jobs existing in significant numbers in the national economy.

Tr. 28-29. Plaintiff's request for review was denied by the Appeals Council on November 5, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 1, 6; 20 C.F.R. § 404.981.

On January 4, 2005, plaintiff filed a complaint in this court seeking judicial review of the ALJ's decision. (Dkt. #1). Plaintiff argues that decision should be reversed and remanded for an award of benefits, because:

(a) the ALJ erred in finding none of plaintiff's mental impairments to be severe;

(b) the ALJ erred in posing a hypothetical question to the vocational expert that did not include all of plaintiff's mental and physical impairments; and

(c) the ALJ erred in finding plaintiff was capable of performing her past relevant work as a receptionist and other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set

ORDER
Page - 2

forth below, finds that this matter should be remanded for further administrative proceedings.

## DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status). Plaintiff's date last insured was December 31, 2001. Tr. 15, 31. Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II.  The ALJ Properly Found Plaintiff Did Not Have a Severe Mental Impairment

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. At step two of that process, the ALJ must determine if an impairment is "severe". Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect [her] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

Plaintiff argues the ALJ erred in not finding her depression, anxiety and/or dependent personality disorder to be severe impairments. The undersigned disagrees. With respect to plaintiff's depression, the ALJ found as follows:

> There is no evidence that depression more than minimally affected the claimant's ability to perform basic work activities before her date last insured, December 31, 2001. The record before that date shows a handful of episodes in which the claimant complained of depressive symptoms. But evidence of these episodes is few and far between and does not address the effect, if any, the episodes had on the claimant's ability to perform work-related activities. Therefore, the claimant's alleged mental impairments cannot be deemed "severe" impairments. I make no finding regarding the severity of the claimant's alleged depression after December 31, 2001.

Tr. 22. The undersigned finds the ALJ's determination here to be well supported by substantial evidence in the record.

Plaintiff asserts the record shows she suffered from and reported symptoms of depression, anxiety and/or dependant personality disorder. While the record does indicate that plaintiff at times reported and was noted to have depressive symptoms, there is little evidence in the record that those symptoms resulted in any significant work-related limitations prior to her date last insured. See Tr. 261-62, 264, 269, 279-80, 288-90, 292-95, 311, 313-14, 321, 323-24, 328-30, 332-33, 335-37. To the extent that such limitations are indicated in the record, furthermore, the evidence shows they were largely situational and for the most part transitory. See id. Dr. Jeff Hart did find plaintiff to be "not gainfully employable" based on her mental impairments. Tr. 342-49. Dr. Hart, however, did not evaluate plaintiff until late March 2004, long after her date last insured, and thus his opinions are not relevant to the time period at issue here.[2]

Plaintiff next points to the global assessment of functioning ("GAF") scores with which she has been

---

[2] Although it is possible for a claimant to establish "continuous disabling severity by means of a retrospective diagnosis," such is not the case here, as Dr. Hart provided no opinion regarding plaintiff's mental health status or ability to work prior to the date her insured status expired. Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1461 (9th Cir. 1995) (claimant is eligible for coverage only if current period of disability extends back continuously to onset date prior to date last insured).

ORDER
Page - 4

diagnosed by various sources in the record. Those scores prior to plaintiff's date last insured ranged from a low of 50 to a high of 65. Tr. 275, 293, 311, 314, 321, 324. The ALJ noted that according to the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM"), a GAF score of 50 indicated "serious symptoms or a serious impairment in social, occupational, or school functioning," a GAF score of 51 to 60 indicated "moderate symptoms or moderate difficulty in social, occupational, or school functioning," and a GAF score of 61 to 70 indicated "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." Tr. 21-22.

The undersigned, however, does not find that plaintiff's GAF scores establish she suffered from a severe mental impairment. First, as indicated above, the GAF score appears to cover social, occupational or school functioning, without further defining the specific mental impairment or impairments measured. In addition, only one of the GAF scores with which plaintiff was assessed was provided by an "acceptable medical source," as that term is defined in the Social Security Regulations. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (acceptable medical sources include licensed physicians and psychologists); 20 C.F.R. § 404.1513(a), (d). That GAF score also was the highest (60-65) and most recent score provided, thereby indicating that plaintiff's symptoms were mostly mild. Tr. 293. Indeed, the majority of plaintiff's current GAF scores were within the 60 to 65 range, and on at least one occasion her highest GAF score within the past year was deemed to be 70. See Tr. 293, 311, 314, 321, 324. Finally, as discussed above, the clinical and other diagnostic notes in the record indicate that those mental limitations she did exhibit were for the most part mild, and largely situational or transitory.

In addition, while plaintiff has been diagnosed by the mental health therapists she saw prior to her date last insured with a dependant personality disorder and generalized anxiety (Tr. 275, 329, 331), she has not been so diagnosed by a psychiatrist, psychologist or other "acceptable medical source." In any event, as with plaintiff's depressive symptoms, the evidence in the record fails to show any symptoms that she did have stemming from these problems caused significant, or more than transitory, work-related limitations.[3]

---

[3] Plaintiff points to evidence in the record indicating that she reported suicidal ideation at times, and that one of her mental health therapists even issued a "crisis alert" for her. See Tr. 261-62, 264, 280, 324, 332-33, 337. At other times, however, she was noted to have no suicidal ideation or plan or intent to harm herself, and thus was not considered to be in any imminent risk. Tr. 269, 311, 314, 328, 330, 336. In any event, the mere fact that a claimant has depressive or other mental health symptoms, does not in itself establish the presence of a "severe" impairment, let alone disability. Rather, the claimant must show that those symptoms have resulted in significant work-related limitations. As discussed above, plaintiff has not done so here.

ORDER
Page - 5

1  The undersigned, therefore, also finds that the ALJ did not err in failing to specifically address plaintiff's
2  alleged dependant personality disorder and generalized anxiety.
3      Plaintiff next argues the ALJ erred in not calling a psychiatric expert to testify at the hearing.  She
4  has failed to establish, however, that the ALJ was required to do so.  An ALJ's duty to further develop the
5  record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for
6  proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see also SSR
7  96-2p, 1996 WL 374188 *4 ("[T]he ALJ . . . may need to consult a medical expert to gain more insight into
8  what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is
9  well-supported or whether it is not inconsistent with other substantial evidence in the case record.").  A
10 review of the medical evidence in the record does not clearly indicate that it is sufficiently ambiguous or
11 inadequate so as to require the testimony of a medical expert.  As discussed above, that evidence fails to
12 show that plaintiff had significant work-related mental functional limitations.
13     Plaintiff further argues the ALJ improperly substituted his own opinion for those of the psychiatric
14 and other medical sources in the record regarding her mental limitations. See Gonzalez Perez v. Secretary
15 of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for
16 findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795,
17 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober
18 v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician
19 who testified before him).  Again, however, there is only one opinion from an "acceptable medical source"
20 in the record concerning plaintiff's mental impairments during the relevant time period (Tr. 288-98), and
21 that opinion generally comports with the ALJ's findings.
22     Lastly, plaintiff argues the ALJ erred in failing to use either a psychiatric review technique form or a
23 mental residual functional capacity assessment form to evaluate her mental impairments.  To evaluate the
24 severity of a claimant's mental impairments, the Commissioner must "follow a special technique at each
25 level in the administrative review process." 20 C.F.R. § 404.1520a(a).  Under this technique, the
26 Commissioner first determines whether the claimant has a medically determinable impairment. 20 C.F.R. §
27 404.1520a(b)(1).  If the claimant does have such an impairment, then the Commissioner rates the "degree of
28 functional limitation" resulting from that impairment. 20 C.F.R. § 404.1520a(b)(2).

ORDER
Page - 6

Rating the degree of functional limitation involves consideration of four functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c). If a claimant's degree of limitation in the first three areas is rated "none" or "mild" and "none" in the fourth area, then the claimant's mental impairment generally is considered not severe, unless evidence in the record otherwise indicates there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). At the initial and reconsideration levels of the administrative review process, "a standard document" is completed to record how the above technique was applied. 20 C.F.R. § 404.1520a(e). At the ALJ hearing level, documentation of the technique is done in the decision itself. Id.

The ALJ, therefore, is not required to complete a separate form to document the above technique. Nevertheless, as just noted, documentation of the technique must be included in the ALJ's decision itself. It does not appear the ALJ did so in this case. Defendant argues that the ALJ was not required to do so in this case, because he did not find plaintiff to have any medically determinable impairment. See 20 C.F.R. § 404.1520a(b)(1) (ALJ first must determine if claimant has medically determinable impairment). There is some logic to this argument, in that the ALJ never expressly found plaintiff's alleged depression to be a medically determinable impairment, even though the ALJ did go on to determine that her depression was not a "severe" impairment. See Tr. 20, 22, 28.

The record itself also fails to indicate plaintiff was ever actually diagnosed as having depression by an "acceptable medical source." See 20 C.F.R. § 404.1527(a) (mental or physical impairment must result from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and other medical evidence, such as opinions from physicians and psychologists or other acceptable medical sources). For example, plaintiff was evaluated by a psychologist as part of an interdisciplinary pain evaluation in late December 2002. However, she was found to have only "[p]ossible" mild depression. Tr. 288. A "specific differential diagnosis" regarding her "[r]eported intermittent mood swings and symptoms of depression and anxiety" thus was deferred. Tr. 292. Even plaintiff's mental health therapists were equivocal with respect to their diagnoses of her depression, describing it on two occasions in October 2002, as "R/O Major Depressive D/O, Single Episode, Mild." Tr. 321, 324. Similarly, no acceptable medical source has assessed plaintiff with either generalized anxiety or a dependant personality disorder. See Tr. 275, 329, 331.

ORDER
Page - 7

1    The undersigned thus finds the ALJ did not err in failing to include in his decision documentation of the special technique used in determining the severity of plaintiff's impairments, because there is little evidence in the record that any acceptable medical source actually had diagnosed plaintiff with a medically determinable mental impairment.  To the extent the ALJ did err in this regard, the undersigned finds such error to be harmless. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error).  This is because, as discussed above, there is little evidence of any significant work-related mental functional limitations that are more than situational and transitory in nature, which would indicate plaintiff suffers from a severe mental impairment.

III.    The Hypothetical Question the ALJ Posed to the Vocational Expert Was Valid

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant retains the ability to stand, and/or walk a total of six hours in an eight hour day, but when sitting, she must be allowed to change to a standing position at will; to lift 20 pounds occasionally from floor to waist, 10 pounds frequently from floor to waist, 15 pounds occasionally to frequently from waist to shoulder, and 10 pounds occasionally from shoulder to head; to carry 15 pounds occasionally and 5 pounds frequently for 100 feet; to push 45 pounds occasionally and 20 pounds frequently; to pull 10 pounds occasionally and 5 pounds frequently; to reach overhead with objects weighing 5 pounds; to perform fine manipulation with the dominant hand occasionally,

ORDER
Page - 8

meaning up to 1/3 of the day.

Tr. 26-27. At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

> Let me give you a hypothetical. I'll ask you just to assume what I set out in the hypothetical and disregard the, the testimony or anything you've seen in the written record, except to the extent that I ask you to include that. The hypothetical involves a female who is born in January of 1959. So, she's currently age 44, and she's claiming disability since September of 1997, when she was 38. So, for the period we're looking at the age range is 38 to 44. She has a high school equivalency diploma, so 12 years of education, and this lady's work history is the same as Ms. Willingham. So, there we incorporate everything that you've seen in the written record about that as well as the testimony. She has sustained an injury to her neck and has had some problems with her hands, and has other problems of a physical and mental nature, but from a vocational standpoint what is significant is how she is limited by all of these. And at least for maybe just the start I'll turn to a, a physical capacity evaluation made -- this was at the pain center. And this you don't have. This is Exhibit 7F, page 19 [Tr. 241], performance based physical capacity examination. Some of this is not filled in, so I'm gong to say by transposing another one -- let's see, this will be the disability determination unit's 9 -- Exhibit 9F [Tr. 255-59]. So, that's -- so anyway, we're getting to it. So that's -- it says -- let's say that she can sit -- let's say that she can sit cumulatively in an eight hour work day about six hours or more, and the same goes for standing and/or walking combination, cumulatively six hours or more. Lifting, 20 pounds occasionally, from, from floor to waist, floor to waist -- floor to the waist or knuckle? . . .
>
> Okay. It's floor to waist or knuckle. That's 20 pounds occasional. 10 frequently floor to waist or knuckle. Now, from waist or knuckle to shoulder, we're moving up here, 15 pounds occasionally or frequently, and even -- going up even higher, from shoulder to overhead, 10 pounds occasionally, 5 frequently. And then carry 15 pounds occasionally for 100 feet, 5 pounds frequently for 100 feet. Now, we also have push/pull force limitations, 45 pounds push occasionally, 20 pounds push frequently. Pull, now, pull 20 pounds occasional, 5 pounds frequently. I can go over this again with you if you need it. It looks to me at this point that we have probably more or less in a light capacity here. Now -- oh, here's another one. Reach overhead with weight, five pounds. I'm going to add another one here, in the category of a manipulative limitation. With the dominant right hand, she's limited to -- this is fine manipulation, fingering limited, meaning that she can only do this occasionally, meaning up to one third of a normal workday, fine manipulation with the dominant right hand. She's had carpal tunnel surgery two times.

Tr. 391-93. Plaintiff argues the ALJ failed to include in the above hypothetical question all of her mental and physical limitations, thereby making that question unreliable. The undersigned disagrees.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that

description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

With respect to her mental impairments, plaintiff again argues the ALJ should have found them to be severe, and that had the ALJ done so and included limitations stemming therefrom in the hypothetical question he posed, the vocational expert likely would have testified that she was disabled. As discussed above though, the ALJ did not err in finding none of plaintiff's impairments to be severe. In addition, although plaintiff asserts the vocational expert likely would have found her disabled based on her mental limitations, she cites to no evidence in the record to support that assertion. As such, the ALJ did not err in excluding such limitations from the hypothetical question.

Plaintiff further argues the ALJ erred in excluding from the hypothetical question the reaching and fingering limitations noted by Dr. David L. Deutsch, a non-examining consulting physician, in the physical residual functional capacity assessment form he affirmed in late February 2001. Tr. 255-59. On that form, Dr. Deutsch opined that plaintiff was limited to occasional bilateral overhead reaching[4] and to occasional bilateral fingering (i.e., fine manipulation). Tr. 257. Plaintiff asserts that although the ALJ stated at the hearing that he was "transposing" this form – the Exhibit 9F referred to by the ALJ (Tr. 392) – he did not include either of these limitations. The ALJ's statements, however, indicate that he was "transposing" this exhibit only because the physical capacities evaluation he also referred to at the hearing, Exhibit 7F, page 19 (Tr. 241), contained gaps that needed to be filled in (Tr. 392). None of those "gaps" though, concerned plaintiff's ability to reach overhead or perform fine manipulation. See Tr. 241.

Plaintiff nevertheless asserts that the medical evidence in the record supports the overhead reaching limitation adopted by Dr. Deutsch, because she has been diagnosed with a small central protrusion and/or herniation in her back, with radiculopathy. See Tr. 140, 184, 197, 199. However, the medical evidence in the record as a whole instead supports the ALJ's determination here. Thus, in mid-December 1997, for example, Steven L. Brack, D.O., found plaintiff had "full range of motion" in her cervical spine and normal

---

[4] Although Dr. Deutsch did mark the "[l]imited" box for the category "[r]eaching in all directions (including overhead)," the physical residual functional capacity assessment form also contains a section for describing "how the activities checked 'limited' are impaired." Tr. 257. In that section, Dr. Deutsch indicated plaintiff was limited to only occasional bilateral overhead reaching. Id. As such, it does not appear he felt she was limited in her ability to reach in all directions.

ORDER
Page - 10

motor strength. Tr. 197.  He indicated she had limitations in her ability to reach late February 1998, but did not specify what those were. Tr. 164.  Plaintiff continued to have full cervical range of motion and normal motor strength in late March 1998. Tr. 190.

In early June 2001, Dr. Brack once more noted plaintiff had normal motor strength, and he found her shoulder range of motion to be "satisfactory." Tr. 187.  The record does contain a clinic note from Dr. William J. Morris that states that plaintiff's neck would "limit her as far as overhead work or heavy lifting beyond light or sedentary activities." Tr. 245.  This assessment though, largely comports with the overhead reaching limit the ALJ imposed on plaintiff. See Tr. 27, 392-93.  In early November 2002, Dr. Steven Litsky found plaintiff to have normal muscle strength in her upper and lower extremities and normal range of motion in her back and shoulders. Tr. 301.  These findings were reproduced during the interdisciplinary pain evaluation she underwent in late December 2002. Tr. 291, 296.  Indeed, plaintiff was found to be able to lift ten pounds overhead at the time. Tr. 296.

The medical evidence in the record regarding plaintiff's ability to reach overhead thus supports the limitations the ALJ imposed on her in this functional area, including the physical capacities evaluation the ALJ relied on at the hearing. See Tr. 236-41.  With respect to the ALJ's determination to limit plaintiff to performing fine manipulation occasionally with the dominant right hand (Tr. 393), rather than bilaterally, the evidence in the record generally supports that determination as well.  In February 1998, Dr. Brack noted limitations in plaintiff's ability to finger, but, again, did not specify those limitations. Tr. 164.  He thought that she could return to "some form of gainful employment under a light duty status," as long as she did not perform "repetitive motions with her hands and wrists." Tr. 190.

In mid-May 1998, plaintiff reported that her left wrist was "doing reasonably well," with only "mild decreased range of motion." Tr. 189.  She also did "reasonably well" in terms of her right hand following carpal tunnel release surgery for nearly a month, until she re-injured it in a fall in early July 1998. Id.  In late July, however, she was noted to have "made very nice headway" and "few complaints" with her left wrist. Tr. 135 (emphasis in original).  Thus, although plaintiff's right wrist had "lost ground" because of the fall after having shown initial improvement, her left wrist was "doing extremely well." Tr. 135, 219.  That wrist continued to do "tremendously well" through late August 1998, while her right wrist remained "a major problem." Tr. 134, 188.  In early October 1998, the left wrist again was noted to have "done well" and to

be "essentially asymptomatic." Tr. 219.

In both early November and early December 2002, plaintiff was found to have full range of motion in her wrists, with "no arthritic changes or muscle wasting noted." Tr. 291-92, 301. Therefore, while the evidence in the record supports a finding of limitation with respect to fine manipulation in the right wrist, there is no such evidence concerning the left wrist. As such, the ALJ properly disregarded the opinion of Dr. Deutsch regarding plaintiff's ability to perform fine manipulation bilaterally in favor of the weight of the evidence in the record that plaintiff was so limited only in regard to her right hand. Accordingly, the undersigned finds the hypothetical question the ALJ posed to the vocational expert accurately described plaintiff's limitations, and thus was reliable.

IV. <u>The ALJ Erred in Finding Plaintiff Capable of Performing Her Past Relevant Work or Other Work Existing in Significant Numbers in the National Economy</u>

Plaintiff argues the ALJ erred in finding her capable of performing both her past relevant work as a receptionist and other work existing in significant numbers in the national economy. She asserts that the limitations on overhead reaching and bilateral fine manipulation found by Dr. Deutsch, when presented to the vocational expert, resulted in testimony indicating that she not only would be precluded from her past relevant work, but from any other work as well. While the undersigned finds the ALJ erred in determining that plaintiff was capable of performing her past work as a receptionist and the other work identified by the vocational expert that she could do, it is not clear from the testimony of the vocational expert that plaintiff actually would be precluded from performing those jobs.

At the hearing, the vocational expert testified that although the Dictionary of Occupational Titles ("DOT") defined the job of receptionist to require occasional fine manipulation, she felt that job actually required the ability to perform that task frequently. Tr. 395, 399-401. The vocational expert also testified that plaintiff could perform the job of charge account clerk, again based on the DOT defining that job to require only occasional fine manipulation, while she believed it called for the ability to perform that task on an occasional to frequent basis, or, more specifically, "a little more than occasional." Tr. 396-97, 401-02. As such, the testimony of the vocational expert in this case conflicts with the information contained in the DOT concerning both jobs identified by the vocational expert that plaintiff could do.

The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the Dictionary of Occupational Titles ("DOT"). <u>Haddock v.</u>

ORDER
Page - 12

Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.

In his opinion, the ALJ resolved the above discrepancies as follows:

> The vocational expert testified that according to the DOT [sic] The receptionist and charge account jobs require only occasional fine fingering, which is within the capability of the claimant.  The vocational expert opined, however, that both jobs require more than occasional fine fingering.  Because she gave no persuasive justification for her deference[5] I accept and adopt the DOT's classification of the fine fingering requirements for both jobs.

Tr. 27.  At the hearing, however, the ALJ merely inquired as to why the DOT defined the job of charge account clerk to require occasional fine manipulation. Tr. 397.  The ALJ did not ask the vocational expert why her opinion differed from that of the DOT.  As such, it is unclear how the ALJ could determine that the vocational expert's "justification" was not persuasive, as she gave none.  In terms of the receptionist position, on the other hand, the vocational expert did provide an explanation.  She testified that she was basing her disagreement with the DOT on the jobs she had seen and analyzed. Tr. 401.  Here too, though fairly general in nature, the ALJ did not conduct any further inquiry into the vocational expert's testimony on this issue, nor, as noted above, did the ALJ state in his decision why that testimony was unpersuasive.  For these reasons, the undersigned finds the ALJ's explanation was not reasonable.

Plaintiff argues that the vocational expert further testified that a limitation to occasional bilateral reaching would preclude her from performing all work.  This, however, is not an accurate description of the vocational expert's testimony.  While the vocational expert did testify in response to questioning from plaintiff's attorney, that a limitation to occasional bilateral reaching would "impact most every job," she did not testify that such a limitation would prevent the hypothetical individual from performing any job. Tr. 402.  It is true that the vocational expert also went on to testify that if this individual had to just leave "her hands in front of her," there would not be any job which would allow for that. Id.  Indeed, this is what one would expect, even without the testimony of a vocational expert.  Nothing in the record though, indicates or even suggests plaintiff is so limited that she cannot move her hands.

---

[5]The undersigned assumes the ALJ meant "difference" as opposed to deference here.

1         In any event, the opinion plaintiff relies on, that of Dr. Deutsch, merely provides that she is limited
2   to occasional bilateral <u>overhead</u> reaching. Tr. 257.  With respect to this limitation, however, the vocational
3   expert gave no testimony.  In addition, as discussed above, the ALJ did not err in excluding this limitation
4   from the hypothetical question posed to the vocational expert.  The argument that plaintiff should be found
5   disabled based on the vocational expert's testimony that a limitation to occasional bilateral fingering would
6   "greatly erode the labor market even more" (Tr. 402), also is without merit.  Again, the vocational expert
7   did not testify that such a limitation would eliminate <u>all</u> possible jobs.  As discussed above, furthermore, the
8   evidence in the record does not establish that plaintiff's fingering limitation was <u>bilateral</u>, but rather shows
9   that it was largely limited to her right hand.  Because there is no vocational expert testimony as to the effect
10  of that limitation, it is unclear whether it in fact would be disabling.

11        Plaintiff further challenges the ALJ's determination with respect to her ability to perform her past
12  job as a receptionist based on statements from her state department of labor and industries counselor.  That
13  counselor stated in mid-November 2000, that "[d]ue to her work related injury," plaintiff was "unable to
14  perform" the tasks involved in the job of medical biller. Tr. 150.  According to the counselor, those tasks
15  normally required "the use of eyes, hands, and fingers to operate the keyboard of a clerical machine quickly
16  and accurately and the ability to perform repetitive activities and work with speed and accuracy." <u>Id.</u>  It is
17  not clear, however, why plaintiff's counselor felt her "work related injury" precluded her from performing
18  these tasks.  It also is not clear from the record that these tasks are directly applicable to, or sufficiently the
19  same as, those required for performing the jobs of receptionist and charge account clerk so as to make a
20  comparison here appropriate.  In any event, as discussed above, the weight of the evidence in the record
21  does not necessarily establish that plaintiff is precluded from doing all work.

22        Lastly, plaintiff argues the ALJ committed reversible error when he substituted his own opinion for
23  that expressed in a "vocational decision worksheet" completed in early October 2001, indicating she could
24  not perform any of her past relevant work. Tr. 115.  That worksheet merely contains boxes to be checked
25  indicating whether plaintiff was capable of performing either her past relevant work or other work and a
26  brief statement that plaintiff had a residual functional capacity described as "light, occasional OH reaching
27  and fingering. <u>Id.</u>  As discussed above, however, the medical and other evidence in the record supports the
28  ALJ's assessment of plaintiff's residual functional capacity and the limitations included in the hypothetical

ORDER
Page - 14

question he posed to the vocational expert. Thus, to the extent plaintiff is asserting the ALJ was bound by the opinion contained in this worksheet without regard to the other evidence in the record concerning her impairments, the undersigned finds that assertion to be without merit.

V.     This Matter Should Be Remanded for Further Administrative Proceedings

The court may remand a case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Id.; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to whether or not plaintiff is capable of performing her past relevant work and other work existing in significant numbers in the national economy, this matter shall be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision hereby is REVERSED and REMANDED to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

DATED this 9th day of January, 2006.

Karen L. Strombom
United States Magistrate Judge